ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
Special Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   FAX: (408) 535-5066
   wistar.wilson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-mj-71607 MAG |
|    Plaintiff, | **UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION** |
| v. | |
| LAZARUS ALJANON THOMAS, | Date: November 8, 2023 at 10:30 a.m. |
|    Defendant. | Court: Hon. Sallie Kim |

## I.   INTRODUCTION

The United States has charged Defendant Lazarus Thomas ("Defendant") by criminal complaint with one count of Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). On October 25, 2023, Defendant was found on the 700 block of Van Ness Avenue in the Tenderloin neighborhood of San Francisco in possession of a 9mm privately manufactured firearm (PMF) or "ghost gun" with an extended magazine containing 29[1] rounds of 9mm ammunition. Defendant's criminal history includes multiple felony convictions, including for First Degree Robbery and Second Degree Burglary under

---

[1] The original Report of Investigation from the Bureau of Alcohol, Firearms, Tobacco, and Explosives (ATF) and the criminal complaint list 28 rounds of ammunition. While booking the ammunition into evidence, law enforcement corrected the original count to 29 rounds of ammunition.

1  California law, and he has been arrested multiple times while on probation, demonstrating that he is not
2  amenable to supervision.

3  For the reasons articulated below,[2] Defendant poses a risk to the safety of the community that
4  cannot be mitigated sufficiently by any condition or combination of conditions of release. Therefore,
5  the government respectfully requests that the Defendant be detained pending trial.

6  **II.    LEGAL STANDARDS**

7  Under the Bail Reform Act of 1984, a court must order a defendant detained if it finds that "no
8  condition or combination of conditions will reasonably assure the appearance of the person as required
9  and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is required
10 where a defendant is either a flight risk or a danger to others; it is not necessary to prove both. *See United*
11 *States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Risk of flight must be shown by a preponderance
12 of the evidence, whereas a finding of dangerousness requires support by clear and convincing evidence.
13 *See id.* at 1407; 18 U.S.C. § 3142(f)(2)(B).

14 In evaluating whether the pretrial detention standard is met, the Court must consider relevant
15 statutory factors, including: (1) the nature and circumstances of the offense charged; (2) the weight of
16 the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and
17 seriousness of the danger to any person or to the community that would be posed by the defendant's
18 release. 18 U.S.C. § 3142(g). Involvement of firearms in the offense and criminal history are also
19 among the factors to be considered as part of the foregoing analysis. *See id*. These factors weigh in
20 favor of detention.

21 **III.   DEFENDANT IS A DANGER TO THE COMMUNITY**

22 Defendant poses a danger to the community that cannot be mitigated sufficiently by conditions
23 of release. The circumstances of the offense and Defendant's history and characteristics provide clear
24 and convincing evidence of the risk to the safety of the community if Defendant were to be released
25 pending trial. The offense conduct here was serious; Defendant, a felon, carried on his person in a

26

---

27  [2] As of the time of filing, the government has not received a report from Pretrial Services
28 regarding its bail study. The government may supplement or modify its arguments upon review of
    Pretrial's findings.

U.S. MEM ISO PRETRIAL DETENTION                    2
3:23-mj-71607 MAG

populated area of downtown San Francisco a concealed firearm with an extended magazine loaded with 29 rounds of ammunition. Defendant has multiple felony convictions, including those for Second Degree Burglary and First Degree Robbery, and his record indicates several arrests while on state supervision, demonstrating that he is not amenable to supervision.

### A. Nature and Circumstances of the Offense Charged and Weight of the Evidence

At approximately 6:38 p.m. on October 25, 2023, ATF agents apprehended Defendant during a joint agency operation to combat illegal narcotics distribution in the Tenderloin District of San Francisco. Federal Bureau of Investigation (FBI) personnel had observed via live-feed video several individuals conducting suspected hand-to-hand narcotics transactions on the 700 block of Van Ness Avenue. One such individual was a male wearing a black hooded top and a black balaclava, and he was seated. He was handed money on at least three occasions and appeared to be working with another individual wearing yellow clothing, who was handing over a white substance suspected to be narcotics.

FBI then radioed ATF and other law enforcement a report of a male individual wearing a black hooded top and black balaclava who was suspected of having received cash in connection with the hand-to-hand narcotics transactions on the 700 block of Van Ness Avenue. Law enforcement agents arrived on scene approximately five minutes later, around 6:38 p.m. As they arrived, ATF agents observed a male—later identified as Defendant—who fit the FBI's description (wearing a black hooded jacket and black balaclava) on the same 700 block, approximately 20 to 30 feet south of where the suspected hand-to-hand transactions had been observed.[3] ATF agents then activated their emergency vehicle lights, got out of their vehicles, and audibly announced their presence as police. They instructed Defendant to stop in order to determine whether he was the target who had been observed previously during surveillance participating in the hand-to-hand narcotics operations. But as they approached, Defendant attempted to flee. He was apprehended and placed in handcuffs.

During a frisk of Defendant for weapons, one of the ATF agents felt a significant bulge on the

---

[3] Upon review of the surveillance video in the case, it appears that Defendant—while wearing a black hooded top and black balaclava consistent with the description of the target communicated to the arrest team—was not the same individual originally identified by law enforcement. This was not known to ATF agents prior to discovering the firearm and ammunition on Defendant.

left side of Defendant's torso, beneath his outer jackets.  The agent asked Defendant what the bulge was, and Defendant responded that it was his gun.  Upon removing Defendant's outer jackets, agents discovered a brown satchel wrapped around Defendant's torso, inside of which they located a tan and black firearm (with no serial number)—a PMF—with an extended magazine loaded with 29 rounds of 9-millimeter (mm) ammunition.  Agents also located on Defendant's person a tool known by law enforcement to be used for breaking vehicle windows and burglarizing them.  Photographs of the firearm, ammunition, and magazine appear below.





As described below, Defendant was a felon on the day of his arrest and therefore not legally allowed to possess a firearm or ammunition.  Nevertheless, on October 25, 2023, he was found carrying on his person a concealed PMF with an extended magazine, loaded with 29 rounds of ammunition, in a densely populated area of downtown San Francisco.  He was simultaneously carrying a tool commonly used to break into and burglarize vehicles, a criminal activity for which Defendant has previously been

convicted, as explained further below.

**B. Defendant's History and Characteristics, and Lack of Amenability to Supervision**

Defendant's criminal history generally underscores his danger to the community and lack of amenability to supervision. According to law enforcement records, his criminal history includes at least the following:

- Six felony convictions for Second Degree Burglary in violation of California Penal Code § 459 (stemming from conduct in 2011, 2016, and 2018);
- Two felony convictions for First Degree Robbery in violation of California Penal Code § 211 (stemming from conduct in 2013);
- A misdemeanor conviction for Second Degree Burglary in violation of California Penal Code § 459 (stemming from conduct in 2011);
- Numerous arrests, including, but not limited to, arrests for Battery on Peace Officer/Emergency Personnel/Etc. (Cal. Pen. Code § 243(b)) in 2017; Second Degree Burglary (Cal. Pen. Code § 459) in 2013, 2015, and 2016; Possess/Etc. Burglary Tools (Cal. Pen. Code § 466) in 2011 and 2013; Probation Violation in 2013, 2015, 2016; and violation of Post Release Community Supervision in 2020.

Defendant's criminal history shows a pattern of recidivist conduct involving breaking into and burglarizing vehicles, often while on supervision. For example, according to the police report associated with Defendant's May 22, 2013 arrest on Burglary and other charges, Defendant was on felony probation for First Degree Robbery when law enforcement observed him and two other individuals case and break into a parked vehicle near 111 Bay Street in San Francisco and carry away two black backpacks. Defendant attempted to flee when ordered to stop by the police. Officers subsequently located a broken spark plug—understood by law enforcement to be a burglary tool used to break into cars—in Defendant's pants pocket. Records indicate that Defendant's probation was revoked in lieu of charges being filed.

Similarly, according to the police report associated with Defendant's April 6, 2015 arrest on Burglary and other charges, Defendant was on felony probation when law enforcement observed him case vehicles in the area of Leavenworth and Lombard Streets in San Francisco and ultimately break a

vehicle's rear passenger window, reach into the vehicle, rifle through a bag, and then place an unknown object in his front right pocket. When officers approached and identified themselves as police, Defendant ran. He was ultimately arrested, during which a window punch—a tool understood by law enforcement to be used to commit auto burglaries—fell from Defendant's person. Ultimately the charges associated with this arrest were dismissed.

Defendant was likewise on felony probation when he engaged in Burglary and other offense conduct on January 25, 2016 that appears to have led to a conviction for Second Degree Burglary in violation of California Penal Code §459. According to the associated police report, officers observed Defendant looking inside a parked vehicle in San Francisco using a cell phone flashlight, heard glass break, and then saw Defendant walk away from the vehicle holding a bag they had not seen him holding before. When police approached Thomas, he ran. He was ultimately arrested and admitted to stealing a Vehicle Emergency Kit, explaining that he sold stolen items. He also explained that he used a window punch to break the vehicle window.

Defendant's recidivist criminal conduct—of the same nature and while on supervision—is problematic and demonstrates that he is not amenable to supervision. Although the disposition is not clear from criminal history records, Defendant's more recent—April 14, 2020—warrant for a violation of Post Release Community Supervision suggests that Defendant's compliance on supervision has not improved over time. This concern is exacerbated given the nature of offense conduct in this case, which not only appears to have involved a burglary tool but a loaded firearm.

Because of the dangerousness of Defendant's offense conduct in the instant case, his substantial criminal history, and his poor track record of compliance with conditions of supervision, Defendant poses a danger to the community that cannot be mitigated sufficiently by conditions of release.

### IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court detain Defendant

//
//
//
//

1  pending trial.

2  DATED:       November 7, 2023                    Respectfully submitted,

3                                                   ISMAIL J. RAMSEY
                                                    United States Attorney
4

5                                                    /s/ E. Wistar Wilson
                                                    E. WISTAR WILSON
6                                                   Special Assistant United States Attorney